**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>vs.<br><br>POPULUS FINANCIAL GROUP, INC. d/b/a ACE CASH EXPRESS,<br><br>Defendant. | Civil Action No. 3:22-cv-01494-K |

**DEFENDANT POPULUS FINANCIAL GROUP, INC. d/b/a ACE CASH EXPRESS'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT**

**SIDLEY AUSTIN LLP**
Angela C. Zambrano
angela.zambrano@sidley.com
Robert S. Velevis
rvelevis@sidley.com
Barret V. Armbruster
barmbruster@sidley.com
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Chris J. Willis (*pro hac vice* forthcoming)
chris.willis@troutman.com
Sarah T. Reise (*pro hac vice* forthcoming)
sarah.reise@troutman.com
600 Peachtree Street, N.E.
Suite 3000
Atlanta, Georgia 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT AND AUTHORITIES ........................................................................................ 1

I. Dismissal Is the Appropriate Remedy for the CFPB's Invalid Enforcement Action. ........ 1

II. This Action Is Unconstitutional Because the Bureau's Funding Structure Violates the Constitution's Appropriations Clause. ........................................................................ 2

A. The CFPB's funding structure shields it from Congressional oversight. ....................... 3

B. The Appropriations Clause bars Congress from abdicating its power of the purse to the Executive. ........................................................................................ 5

C. The CFPB's two-layered shield against fiscal oversight violates the Appropriations Clause. ........................................................................................ 6

D. No other federal agency is doubly insulated from the appropriations process and wields "potent" legislative, executive, and judicial power like the Bureau. ............................. 8

CONCLUSION ........................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFPB v. All Am. Check Cashing, Inc.*,
33 F.4th 218 (5th Cir. 2022) ........................................................................ *passim*

*Cincinnati Soap Co. v. United States*,
301 U.S. 308 (1937)........................................................................................5

*Community Financial Services Association of America, Ltd. v. CFPB*,
No. 21-50826 ..................................................................................................2

*FEC v. NRA Pol. Victory Fund*,
6 F.3d 821 (D.C. Cir. 1993)............................................................................1

*Lucia v. SEC*,
138 S. Ct. 2044 (2018).....................................................................................1

*New York v. United States*,
505 U.S. 144 (1992)....................................................................................8, 9

*OPM v. Richmond*,
496 U.S. 414 (1990)..........................................................................................6

*PHH Corp. v. CFPB*,
881 F.3d 75 (D.C. Cir. 2018), *abrogated by Seila Law*, 140 S. Ct. .............................7, 8

*Reeside v. Walker*,
52 U.S. (11 How.) 272 (1851) .........................................................................6

*Seila Law LLC v. CFPB*,
140 S. Ct. 2183 (2020).............................................................................. *passim*

*Sissel v. U.S. Dep't of Health & Hum. Servs.*,
799 F.3d 1035 (D.C. Cir. 2015).......................................................................5

*U.S. Dep't of Navy v. FLRA*,
665 F.3d 1339 (D.C. Cir. 2012) (Kavanaugh, J.)........................................5, 7

**Statutes**

12 U.S.C. § 243..............................................................................................4, 6

12 U.S.C. § 5497(a) ...........................................................................................4

12 U.S.C. §§ 5497(a)(1).................................................................................4, 6

12 U.S.C. §§ 5497(a)(1)–(2), (d) ....................3

12 U.S.C. § 5497(a)(2)(c) ....................7

12 U.S.C. § 5497(a), (d)....................4

12 U.S.C. § 5497(d) ....................5

12 U.S.C. § 5511(a) ....................3

**Other Authorities**

CFPB, Ann. Performance Plan & Rep., p. 12 (Feb. 2022), https://files.consumerfinance.gov/f/documents/cfpb_performance-plan-and-report_fy22.pdf ....................4–5

Federal Rule of Civil Procedure 12(b)(6) ....................1

U.S. CONST. art. I, sec. 9, cl. 7 ....................5

## PRELIMINARY STATEMENT

In its Complaint, the Consumer Financial Protection Bureau ("CFPB" or "Bureau") seeks to saddle Populus Financial Group, Inc. d/b/a ACE Cash Express ("ACE") with outrageous and unprecedented civil penalties and customer "remediation" for ostensibly (1) "concealing" a repayment-plan option that was plainly disclosed in customers' agreements and (2) resubmitting a debit-card charge one too many times to receive payments that consumers were obligated to (and had expressly consented to) pay. But the days of the Bureau's unchecked administrative agency power to obtain such an inequitable result are, hopefully, over. Specifically, in a recent en banc opinion, five of the judges on the Fifth Circuit found that the CFPB's unprecedented funding structure violates the Constitution's Appropriations Clause. *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 221–22 (5th Cir. 2022) (Jones, J., concurring). The reasoning of that opinion is sound and should be adopted by this Court. And such a ruling would fully dispose of this lawsuit. As explained below, because the CFPB itself is unconstitutional, it lacks the power to bring this lawsuit, and dismissal is the appropriate remedy.

In short, this Court need not reach the dubious merits of the Bureau's claims because the CFPB's Complaint fails to state a claim for relief under Rule 12(b)(6). The Court should grant ACE's motion and dismiss the Complaint.

## ARGUMENT AND AUTHORITIES

### I. Dismissal Is the Appropriate Remedy for the CFPB's Invalid Enforcement Action.

"The proper remedy in a separation of powers case depends on the nature of the underlying problem." *Id.* at 241. If a government actor lacked authority to undertake the challenged actions, invalidation is proper upon a showing of unconstitutionality. *Id.*; *see also Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018); *FEC v. NRA Pol. Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993) (deciding that FEC lacked "authority to bring [an] enforcement action because its composition

violates the Constitution's separation of powers" and dismissing enforcement action). And "[j]ust as a government actor cannot exercise power that the actor does not lawfully possess, so, too, a government actor cannot exercise even its lawful authority using money the actor cannot lawfully spend." *All Am. Check Cashing*, 33 F.4th at 242 (Jones, J., concurring).

As explained below, the CFPB's funding structure violates the separation-of-powers principle enshrined in the Appropriations Clause. Dismissal is thus the proper remedy. *See id.* As Judge Jones stated, "[b]ecause the CFPB has prosecuted this enforcement action using funds derived without a constitutionally footed appropriation or oversight, the court should dismiss the enforcement action." *Id.*

## II. This Action Is Unconstitutional Because the Bureau's Funding Structure Violates the Constitution's Appropriations Clause.

Because the Bureau's funding violates separation-of-powers principles, five judges on the Fifth Circuit recently found the CFPB's structure to be unconstitutional. *See All Am. Check Cashing*, 33 F.4th at 221–22 (Jones, J., concurring).[1] As Chief Justice Roberts explained in another case recently decided by the Supreme Court, the CFPB "wields vast rulemaking, enforcement, and adjudicatory authority over a significant portion of the U.S. economy," affecting millions of Americans. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191, 2204 (2020). But despite endowing the Bureau with this "staggering amalgam of legislative, judicial, and executive power," it is also true that "Congress took unprecedented steps to insulate the [Bureau] against control by the elected branches." *All Am. Check Cashing*, 33 F.4th at 221–22 (Jones, J., concurring). Not only did Congress place the full weight of the CFPB's authority under a single director, removable

[1] This same foundational question was squarely presented in another case pending before the Fifth Circuit styled *Community Financial Services Association of America, Ltd. v. CFPB*, No. 21-50826. The Fifth Circuit panel heard oral argument and submitted that case for decision on May 9, 2022. No decision has been issued as of the date of this filing.

only for cause, but it insulated the Bureau from the appropriations process entirely. *See* 12 U.S.C. §§ 5497(a)(1)–(2), (d).

The United States Supreme Court has already held that the insulation of the Bureau's Director from removal violates the separation of powers. *Seila Law*, 140 S. Ct. at 2197 (vacating judgment in case brought by CFPB because CFPB's single-director structure "violate[d] the separation of powers"). While the Supreme Court did not reach the issue of whether the CFPB's funding structure is similarly invalid, according to a recent concurring opinion, at least five judges on the Fifth Circuit would hold that the CFPB's "budgetary independence" is "antithetical to the constitutional origins of the Appropriations Clause; contrary to the Constitution's structural allocation of powers; unsupported by the funding structure of any previous federal agency; and indefensible by the CFPB." *All Am. Check Cashing*, 33 F.4th at 221–22 (Jones, J., concurring).[2] The Court should find the same here and dismiss this invalid enforcement action with prejudice.

**A. The CFPB's funding structure shields it from Congressional oversight.**

In 2010, Congress created the CFPB to "implement" and "enforce Federal consumer financial law consistently . . . for consumer financial products and services." 12 U.S.C. § 5511(a). Congress thus consolidated within the CFPB the power to administer eighteen existing federal consumer-protection statutes that were previously overseen by separate federal agencies. *See id.* §§ 5481(12), 5581. Congress also authorized the CFPB to regulate and police "any unfair, deceptive, or abusive act or practice" that the Bureau perceives in the nation's consumer-finance sector. *Id.* § 5536(a)(1)(B).

[2] Four other judges signed on to Judge Jones' opinion: Judge Elrod, Judge Duncan, Judge Engelhardt, and Judge Oldham.

To accomplish this broad remit, Congress vested the CFPB with (in the Supreme Court's words) "potent" rulemaking, enforcement, and adjudicative powers. *Seila Law*, 140 S. Ct. at 2193. As a result, the CFPB "possesses the authority to promulgate binding rules fleshing out 19 federal statutes, including a broad prohibition on unfair and deceptive practices in a major segment of the U. S. economy." *Id.* at 2200. It can "seek daunting monetary penalties against private parties on behalf of the United States in federal court, . . . imposing even billion-dollar penalties." *Id.* at 2200–01. And it may "unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications" of its own proceedings. *Id.*

To preserve the CFPB's "independence" from "control by the elected branches," Congress shielded the CFPB from oversight by removing it from the annual appropriations process. *See All Am. Check Cashing*, 33 F.4th at 222 (Jones, J., concurring). The CFPB can unilaterally requisition up to 12% of the Federal Reserve's budget every year, without any review by Congress. *See* 12 U.S.C. § 5497(a), (d). And because the Federal Reserve's funding is also severed from the congressional appropriations process—the Federal Reserve self-funds through assessments on the banks it regulates—the CFPB's "funding is doubly removed from congressional review." *All Am. Check Cashing*, 33 F.4th at 221 (Jones, J., concurring); *see also* 12 U.S.C. § 243. So too with the Executive branch. The Office of Management and Budget has no "jurisdiction or oversight over the affairs or operations of the Bureau." 12 U.S.C. § 5497(a).

The CFPB Director thus may appropriate from the Federal Reserve whatever "amount determined by the Director to be reasonably necessary to carry out" the CFPB's duties in any given year—with no input from Congress, and without the need for any justification. *Id.* § 5497(a)(1). This year, the CFPB Director could demand up to $734 million. *See* CFPB, Ann. Performance Plan & Rep., p. 12 (Feb. 2022), https://files.consumerfinance.gov/f/documents/cfpb_performance-

plan-and-report_fy22.pdf. And the CFPB may further line its coffers with the "knee-buckling" civil penalties it recovers in "coercive" administrative and civil enforcement actions against private parties, like the instant case against ACE. *Seila Law*, 140 S. Ct. at 2200, 2202 n.8; *see also* 12 U.S.C. § 5497(d) (providing for Civil Penalty Fund that Bureau may use to pay restitution or fund education programs). This structure, as explained below, is not constitutional.

**B. The Appropriations Clause bars Congress from abdicating its power of the purse to the Executive.**

Article I, Section 9, Clause 7 of the United States Constitution, otherwise known as the Appropriations Clause, provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. CONST. art. I, sec. 9, cl. 7. This mandate that Congress alone shall wield the power of the federal purse serves as "a bulwark of the Constitution's separation of powers"—an important restraint on the Executive Branch. *U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.) (quoting 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1342, at 213–14 (1833)); *see also Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) (noting that the Appropriations Clause "was intended as a restriction upon the disbursing authority of the Executive department"). It also protects individual liberty "by ensuring that only those representatives closest to the people can initiate legislation to wrest money from the people." *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 799 F.3d 1035, 1052 (D.C. Cir. 2015) (Kavanaugh, J., dissenting from denial of reh'g en banc).

As Judge Jones observed in *All American Check Cashing*:

> Congress's control of the purse strings renders the President and his functionaries directly accountable to the Congress and, therefore, further accountable to the people. That second channel of political accountability, premised on the separation of powers, fills the gap of accountability over the President between elections and any gap of accountability between the President and his functionaries.

33 F.4th at 233 (Jones, J., concurring). Put differently, the Appropriations Clause "assure[s] that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents." *OPM v. Richmond*, 496 U.S. 414, 428 (1990). "Any other course would give to the fiscal officers a most dangerous discretion." *Reeside v. Walker*, 52 U.S. (11 How.) 272, 291 (1851).

Yet, Congress tried to do just that by giving the CFPB two layers of insulation from the congressional appropriations process.

**C. The CFPB's two-layered shield against fiscal oversight violates the Appropriations Clause.**

The Bureau's funding structure violates the Appropriations Clause because, while the CFPB wields great power over the economy of the United States, it is beholden to no one when it comes to formulating and funding its own budget. The CFPB Director possesses unchecked authority to requisition from the Federal Reserve the amount he deems "reasonably necessary" for the CFPB to operate—up to 12% of the Federal Reserve's annual budget (almost three quarters of a billion dollars this year)—without any input or approval from Congress. *All Am. Cash Checking*, 33 F.4th at 223 (Jones, J., concurring) (quoting 12 U.S.C. §§ 5497(a)(1)). And the Federal Reserve itself is insulated from the appropriations process due to its own self-funding mechanism, making the CFPB ***doubly*** removed from any "Consequence of Appropriations made by Law." *See* 12 U.S.C. § 243. By abdicating the power of the purse to the CFPB, Congress violated the separation of powers.

For example, the Director could have demanded up to $717.5 million in fiscal year 2021 without the need to justify this demand to Congress. *All Am. Cash Checking*, 33 F.4th at 223 (Jones, J., concurring). The Director's demand for funds on the Federal Reserve is explicitly ***not*** subject to "review by the Committees on Appropriations of the House of Representatives and the

Senate." 12 U.S.C. § 5497(a)(2)(c). As then-Judge Kavanaugh observed, "Congress cannot supervise or direct the [CFPB] Director on an ongoing basis" when "[t]he CFPB is not subject to the ordinary annual appropriations process." *PHH Corp. v. CFPB*, 881 F.3d 75, 198 & n.19 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) (disagreeing with en banc majority's holding that CFPB Director's "only for-cause" removal protection was constitutional), *abrogated by Seila Law*, 140 S. Ct. at 2192.[3]

Congress thus abdicated its own authority to reign in the Bureau. And because this "permanent appropriation to an executive department is . . . inconsistent with history and longstanding practice," it violates separation of powers and is unconstitutional. *See All Am. Check Cashing*, 33 F.4th at 238 (Jones, J., concurring).

Congress's abdication of its power over the purse is even more dangerous now that the Supreme Court invalidated the CFPB Director's "only for-cause" removal protection in *Seila Law*. Indeed, "the CFPB Director's newfound presidential subservience exacerbates the constitutional problems arising from the CFPB's budgetary independence because it more completely unites the powers of the purse and sword in the President's hands." *Id.* at 234. The President may now direct the Bureau to spend almost three quarters of a billion dollars without an ounce of oversight from Congress. This is antithetical to the purpose of the Appropriations Clause: the Framers' fear that "the executive would possess an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure." *U.S. Dep't of Navy*, 665 F.3d at 1347 (Kavanaugh,

---

[3] While the D.C. Circuit majority in *PHH Corp.* disagreed with then-Judge Kavanaugh and found that the Bureau's "independent funding source has no constitutionally salient effect on the President's power," *id.* at 96, the Supreme Court, with now-Justice Kavanaugh in the majority, explicitly rejected that observation in *Seila Law*, *see* 140 S. Ct. at 2204 ("The CFPB's receipt of funds outside the appropriations process further aggravates the agency's threat to Presidential control."). The handful of district court decisions that follow *PHH Corp.* or its arguments have been similarly abrogated or wrongly decided. *See All Am. Check Cashing*, 33 F.4th at 239–40 (Jones, J., concurring) (listing and distinguishing cases). As Judge Jones recognized, "[n]one of th[ose] decisions bind this court." *Id.* at 240. The Supreme Court will have the last word on whether the CFPB's unprecedented funding structure passes constitutional muster.

J.) (quoting 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1342, at 213–14 (1833)).

It is little comfort that Congress retains authority to alter the CFPB's funding structure through the usual legislative process. *See All Am. Check Cashing*, 33 F.4th at 238 (Jones, J., concurring). Violations of separation of powers cannot be cured merely because "the encroached-upon branch approves the encroachment" or "has the hypothetical wherewithal to rebuff the intrusion." *New York v. United States*, 505 U.S. 144, 182 (1992); *see also PHH Corp.*, 881 F.3d at 181 (Henderson, J., dissenting). There have already been seventeen unsuccessful legislative attempts to alter the CFPB's funding structure in the ten years of its existence. *All Am. Check Cashing*, 33 F.4th at 239 (Jones, J., concurring). Not one has succeeded. And that was apparently by design, as the CFPB's architects sought to shield the agency against a Congress controlled by the other party. *See id.* at 239 & n.64. They should not be permitted to flout the requirements of the Constitution.

**D. No other federal agency is doubly insulated from the appropriations process and wields "potent" legislative, executive, and judicial power like the Bureau.**

"Perhaps the most telling indication of [a] severe constitutional problem with an executive entity is [a] lack of historical precedent to support it." *Seila Law*, 140 S. Ct. at 2201 (internal quotation marks omitted) (alterations in original) (quoting *Free Enter. Fund v. Pub. Co.*, 561 U.S. 477, 505 (2010)). As the Supreme Court noted in *Seila Law*, the CFPB's structure—including its funding process—is "almost wholly unprecedented." *Id.*

"Congress has utilized self-funding in only a limited number of 'narrowly-focused' independent agencies." *All Am. Check Cashing*, 33 F.4th at 235 (Jones, J., concurring) (quoting Charles Kruly, *Self-Funding and Agency Independence*, 81 Geo. Wash. L. Rev. 1733, 1735 (2013)). These include the Federal Reserve Board, the Federal Deposit Insurance Corporation

("FDIC"), and the Office of the Comptroller of the Currency ("OCC")—agencies with narrower missions and authority. *Id.* By contrast, the CFPB "acts as a mini legislature, prosecutor, and court, responsible for creating substantive rules for a wide swath of industries, prosecuting violations, and levying knee-buckling penalties against private citizens." *Seila Law*, 140 S. Ct. at 2202 n.8 (internal citation omitted). The Bureau, which siphons off funds from the Federal Reserve, is not "remotely comparable" to the OCC, which must fund itself "by imposing fees on the entities it regulates," and thus "'bear[s] the brunt of public disapproval' for the funds it collects," preserving at least "some level of political accountability." *All Am. Check Cashing*, 33 F.4th at 236–37 (Jones, J., concurring) (alteration in original) (quoting *New York*, 505 U.S. at 169). And unlike the Federal Reserve and FDIC, which operate as independent agencies with multimember leadership drawn from both parties, the CFPB is led by a single Director who is now, after *Seila Law*, fully beholden to the President. *Id.* Put simply, there is no precedent for an agency that is doubly insulated from the appropriations process such that it may requisition an inordinate sum of money at the Executive's sole discretion.

## CONCLUSION

For the foregoing reasons, the CFPB's claims should be dismissed.

Dated: September 23, 2022

Respectfully Submitted,

*/s/ Angela C. Zambrano*

Angela C. Zambrano
Texas Bar No. 24003157
angela.zambrano@sidley.com
Robert S. Velevis
Texas Bar No. 24047032
rvelevis@sidley.com
Barret V. Armbruster
Texas Bar No. 24102922
barmbruster@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

Chris J. Willis (*pro hac vice* forthcoming)
Georgia Bar No. 766297
chris.willis@troutman.com
Sarah T. Reise (*pro hac vice* forthcoming)
Georgia Bar No. 181567
sarah.reise@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, Georgia 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*Attorneys for Defendant Populus Financial Group, Inc. d/b/a ACE Cash Express*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2022, I electronically filed the above Motion to Dismiss for Failure to State a Claim with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Angela C. Zambrano*
Angela C. Zambrano