**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>vs.<br><br>POPULUS FINANCIAL GROUP, INC. d/b/a ACE CASH EXPRESS,<br><br>Defendant. | Civil Action No. 3:22-cv-01494-K |

**DEFENDANT POPULUS FINANCIAL GROUP, INC.**
**d/b/a ACE CASH EXPRESS'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**SIDLEY AUSTIN LLP**
Angela C. Zambrano
angela.zambrano@sidley.com
Robert S. Velevis
rvelevis@sidley.com
Barret V. Armbruster
barmbruster@sidley.com
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Chris J. Willis (*pro hac vice*)
chris.willis@troutman.com
Sarah T. Reise (*pro hac vice*)
sarah.reise@troutman.com
600 Peachtree Street, N.E.
Suite 3000
Atlanta, Georgia 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT AND AUTHORITIES ................................................................................ 3

I. Seven Supreme Court Justices Held CFPB Is Funded from "Surplus Funds" the Federal Reserve Remits to the "Public Treasury" Under 12 U.S.C. § 289(a)(3)(B). ............................ 3

II. This Court Should Reject CFPB's Request to Read "from the Combined Earnings of the Federal Reserve System" Out of the Statute as Surplusage....................................................... 5

III. CFPB Does Not Dispute the Federal Reserve Remitted No Combined Earnings to the Treasury Since September 2022. ............................................................................... 9

IV. Dismissal Is the Appropriate Remedy Here.................................................................... 10

CONCLUSION AND RELIEF REQUESTED ............................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*,
601 U.S. 416 (2024) ........ *passim*

*New Process Steel, L.P. v. NLRB*,
560 U.S. 674 (2010) ........ 10

*Pulsifer v. United States*,
601 U.S. 124 (2024) ........ 8

**Constitutional and Statutory Provisions**

U.S. Const. art. I, § 9, cl. 7 ........ 4

12 U.S.C. § 289 ........ *passim*

12 U.S.C. § 5311 ........ 6

12 U.S.C. § 5328 ........ 8

12 U.S.C. § 5345 ........ 8

12 U.S.C. § 5367 ........ 6

12 U.S.C. § 5381 ........ 6

12 U.S.C. § 5390 ........ 6

12 U.S.C. § 5465 ........ 6

12 U.S.C. § 5497 ........ *passim*

15 U.S.C. § 78u-6 ........ 6

**Legislative Materials**

Restoring American Financial Stability Act of 2010, H.R. 4173,
111th Cong. (as passed by Senate, May 20, 2010) ........ 8

Wall Street Reform and Consumer Protection Act of 2009, H.R. 4173,
111th Cong. (as introduced in House, Dec. 2, 2009) ........ 8

**Other Authorities**

*Earnings*, Encyclopedia of Banking and Finance (10th ed. 1994) .......................................6

*Earnings*, Nasdaq Glossary of Stock Market Terms (last visited Sept. 12, 2024), https://www.nasdaq.com/glossary/e/earnings.......................................6

*Earnings*, Oxford Dictionary of Accounting (4th ed. 2010).......................................6

*Earnings*, Oxford English Dictionary (online ed. 2024).......................................6

## PRELIMINARY STATEMENT

The Supreme Court declared CFPB's funding comes from money that would "otherwise be deposited into the general fund of the Treasury." *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 425 (2024) ("*CFSA*"). CFPB *acknowledges* precisely that in its Opposition. (Doc. 41, at 6.) Yet, in an argument dripping with rhetorical excess designed to conceal the problem it refuses to confront, it urges this Court to rule CFPB is funded with money that will *not* "otherwise be deposited into the general fund of the Treasury." If the expenses of the Federal Reserve system (excluding CFPB's funding) overwhelm the revenues into the Federal Reserve system so none of the Federal Reserve's revenues would "otherwise be deposited into the general fund of the Treasury," it follows, under the logic of *CFSA*, there is no source out of which to pay CFPB.

This is what the Supreme Court concluded Congress intended. And unless the Supreme Court revisits the question, the Bureau is bound by the logic of *CFSA* and the consequences that follow. This Court should follow *CFSA*, which already concluded CFPB's constitutionally appropriated funds must be drawn from only those "surplus funds" "otherwise destined for the general fund of the Treasury" under 12 U.S.C. § 289(a)(3)(B). 601 U.S. at 425.

CFPB does not dispute these funds have run dry. The Federal Reserve remitted ***no combined earnings*** to the Treasury since September 2022, instead booking a ***negative $196.665 billion (and growing)*** deferred asset for ***earnings due to the Treasury***.[1] This shortfall is many times the maximum CFPB may requisition from the Federal Reserve. CFPB's source of funding has dried up. But CFPB offers no excuse why it cannot request additional funding from Congress like any other federal agency, particularly when CFPB's funding provision authorizes

---

[1] Board of Governors of the Federal Reserve System, *Federal Reserve Balance Sheet: Factors Affecting Reserve Balances – H.4.1*, fig. 6 & n.8 (Sept. 12, 2024), https://www.federalreserve.gov/releases/h41/20240912/.

CFPB's Director "to determine that sums available to the Bureau under this section will not be sufficient" and report as much to the House and Senate Appropriations Committees. 12 U.S.C. § 5497(e)(1)(A), (B). And CFPB makes no attempt to explain why Congress limited its public source of funding to "combined earnings" instead of adopting an earlier version of the legislation that included no such limitation (as it did for two other agencies created under Dodd-Frank).

Instead, CFPB crows Populus "has no answer to the substance of the Bureau's allegations and does not dispute that those allegations are well pled." Opp. 2. Of course, Populus did not include challenges to the factual merits in its motion, but it has much to dispute with CFPB's story. To start, the refinancing and repayment plans now challenged by CFPB were presented to customers in the way they were presented *at CFPB's request, with CFPB's full knowledge*, and with disclosure to customers. CFPB never claimed the process was improper for years, and when it did, Populus revised its customer presentations at CFPB's direction. Under these facts, it is hard for CFPB now to claim only it can right this alleged "wrong." And the supposed "taking" money out of customers' accounts is merely that Populus was repaid on loans out of a customer's bank account on the third attempt, rather than the second. Certainly, no customer could claim to be harmed by repaying debts everyone agrees were lawfully owed (and if they ever did, they would have their own recourse not dependent on CFPB's funding).

And while there is plenty to dispute about the baseless allegations in CFPB's complaint, this is not the time for Populus to challenge CFPB's factual assertions. It is the time for CFPB to explain its authority to continue to act. This Court should dismiss based on *CFSA* before the parties spend any time litigating a lawsuit CFPB no longer has constitutional authority to pursue.

## ARGUMENT AND AUTHORITIES

### I. Seven Supreme Court Justices Held CFPB Is Funded from "Surplus Funds" the Federal Reserve Remits to the "Public Treasury" Under 12 U.S.C. § 289(a)(3)(B).

CFPB argues Populus "seriously misrepresents" *CFSA*, Opp. 5-6, but CFPB cannot square its translation of "earnings" into "revenues" with *CFSA*. Seven Supreme Court justices held:

> As a threshold matter, *the parties agree that the Bureau's funding must comply with the Appropriations Clause*. The Appropriations Clause applies to money "drawn from the Treasury." Art. I, § 9, cl. 7. The Bureau draws money from the Federal Reserve System. 12 U.S.C. § 5497(a)(1). And, surplus funds in the Federal Reserve System would otherwise be deposited into the general fund of the Treasury. § 289(a)(3)(B). Whatever the scope of the term "Treasury" in the Appropriations Clause, *money otherwise destined for the general fund of the Treasury qualifies. The Bureau's funding is therefore subject to the requirements of the Appropriations Clause*.

601 U.S. at 425 (emphases added).

The Supreme Court adopted the logical reading of Dodd-Frank that Congress knew the Federal Reserve's statutory scheme requires it to remit any surplus earnings to the Treasury and selected those earnings to be CFPB's source of public funding. *CFSA*, 601 U.S. at 425, 435. The *CFSA* opinion accordingly identified 12 U.S.C. § 289(a)(3)(B)—which provides "[a]ny amounts of the surplus funds of the Federal reserve banks that exceed" the $6.825 billion aggregate surplus limit "shall be transferred … for deposit in the general fund of the Treasury"—as the "money drawn from the Treasury." 12 U.S.C. § 289(a)(3)(B); *CFSA*, 601 U.S. at 425 (internal quotations omitted). This source of funding is precisely what brings CFPB's funding within "the requirements of the Appropriations Clause." *CFSA*, 601 U.S. at 425.[2] Even CFPB cited 12 U.S.C. § 289(a)(2) and (3) in *CFSA* as the source of "the combined earnings of the Federal Reserve System" from

---

[2] CFPB takes issue with Populus "repeatedly referring to the excess earnings that the Federal Reserve remits to the Treasury as 'surplus funds,'" but CFPB's issue is really with the majority in *CFSA*, 601 U.S. at 425 (citing 12 U.S.C. § 289(a)(3)(B)) ("And, surplus funds in the Federal Reserve System would otherwise be deposited into the general fund of the Treasury.") Opp. 5 n.1.

which Congress "authorized the CFPB … to spend a portion of the same earnings on its operations." CFPB Br. 33, *CFSA*, 601 U.S. 416 (2024) (No. 22-448).

Instead of beginning with what the Supreme Court said is the source of CFPB's funding, CFPB prefers to start with what it characterizes as a "plain meaning" interpretation of the word "earnings." But this Court should not avoid squaring the meaning it adopts of the term "earnings" with the logic of such fresh and clearly germane Supreme Court precedent. Yet, that is precisely what CFPB urges this Court do: treat the logic of *CFSA* as entirely irrelevant to the issue in front of the Court. CFPB states *CFSA* "did not interpret" the meaning of "earnings" under 12 U.S.C. § 5497(a)(1), "at all." Opp. 6. As demonstrated above, that is simply wrong.

CFPB's position is belied by *CFSA* itself. The majority held "[t]he statute authorizes the Bureau to draw public funds from a particular source—'the combined earnings of the Federal Reserve System.'" 601 U.S. at 435 (quoting 12 U.S.C. § 5497(a)(1)). And that source "qualifies" as "drawn from the Treasury," U.S. Const. art. I, § 9, cl. 7, for Appropriations Clause purposes because 12 U.S.C. § 289(a)(3)(B) provides "surplus funds in the Federal Reserve System would otherwise be deposited into the general fund of the Treasury," 601 U.S. at 425. The Federal Reserve Act provides only those "amounts of the surplus funds of the Federal Reserve banks that exceed" the $6.825 billion surplus limit "shall be transferred … for deposit in the general fund of the Treasury." 12 U.S.C. § 289(a)(3)(B). Thus, the clear impact of *CFSA* is Congress's designation of the "combined earnings of the Federal Reserve System" to fund CFPB can only refer to the "surplus funds in the Federal Reserve System [that] would otherwise be deposited into the general fund of the Treasury" under 12 U.S.C. § 289(a)(3)(B). 601 U.S. at 425. CFPB's argument ignores this critical foundation of the Supreme Court's decision.

## II. This Court Should Reject CFPB's Request to Read "from the Combined Earnings of the Federal Reserve System" Out of the Statute as Surplusage.

Once detached from the moorings provided by *CFSA*, CFPB frees itself to argue "[t]he statute's reference to the Federal Reserve System's 'earnings' refers to [the Reserve Banks'] '[r]evenue gained from … services, from the investment of capital, or from assets.'" Opp. 4 (quoting *Earnings*, Black's Law Dictionary (9th ed. 2009)). CFPB now contends its funding "fall[s] in the first tier"—the Reserve Banks' "necessary expenses"—of "the waterfall that the Federal Reserve Act establishes for the use of the Federal Reserve Banks' earnings," rather than the final tier of "surplus funds" and "remaining net earnings to Treasury" CFPB identified as its source of public funding in *CFSA*. Opp. 12 (citing 12 U.S.C. §§ 243, 289(a)); *cf.* Br. 33 (citing 12 U.S.C. § 289(a)(2), (3)(A)). In other words, CFPB now argues every dollar that flows into the Federal Reserve banks' revenue stream is a potential source of CFPB's funding.

CFPB spends the bulk of its Opposition tilting at "Defendant's bespoke," "cramped, and highly idiosyncratic understanding of the term earnings." Opp. 5; *see also id.* at 2-5, 6-15. What it ends up with is a construction that reads "from the combined earnings of the Federal Reserve System" out of the statute. It should be rejected on its own terms, but especially in light of the failure to align its reading with the logic of *CFSA*.

CFPB's statutory interpretation argument boils down to a request that the Court accept CFPB's (incorrect) choice among available dictionary definitions and ignore *CFSA*. *See generally* Opp. CFPB urges the Court to adopt Black's Law Dictionary definition of "earnings" as "[r]evenue gained from labor or services, from the investment of capital, or from assets"; or the Oxford English Dictionary's "3.b" definition of "earnings" as "money made through working, trade or

business activity, etc." or "3.c" definition as "income produced by invested capital." Opp. 4.[3] But CFPB's preferred definitions generally pertain to "[t]he amount of money which a ***person*** acquires or becomes entitled to by his or her labour," not earnings recorded by private corporations like the Federal Reserve Banks. *Earnings*, Oxford English Dictionary (online ed. 2024) (emphasis added). "Earnings" in the accounting, banking, and corporate context generally means "net income or profit."[4] The broader definitions of personal "earnings" urged by CFPB simply do not square with *CFSA* or 12 U.S.C. § 289(a)(3)(b)'s limitation that only "surplus funds" "shall be transferred" "for deposit in the general fund of the Treasury." The Court should follow *CFSA* and reject CFPB's argument.

CFPB's warped reading of statutory context also does not support its retranslation of "earnings" as "income." Though CFPB insists "earnings" plainly refers to "income" elsewhere in Dodd-Frank, Opp. 4-5,[5] CFPB does not explain why Dodd-Frank uses "income" distinctly from "earnings," *e.g.*, 12 U.S.C. § 5390(h)(10), (n)(2), (n)(9)(B), (q), and uses "revenues," rather than "earnings," to refer to "income or money earned" by private corporations like the Reserve Banks, *e.g.*, 12 U.S.C. §§ 5311(a)(6)(A), 5367(b)(2), 5381(b).

"[T]he waterfall that the Federal Reserve Act establishes for the use of the Federal Reserve Banks' earnings," Opp. 12 (citing 12 U.S.C. §§ 243, 289(a)), only further demonstrates that

---

[3] CFPB complains of Populus referring to "a U.K. dictionary of accounting and the second of two definitions offered by an online dictionary." Opp. 6. But CFPB also relies on a U.K. online dictionary and the fourth and fifth of five definitions offered by said online dictionary. Opp. 4 (citing *Earnings*, Oxford English Dictionary (online ed. 2024)).

[4] *Earnings*, Oxford Dictionary of Accounting (4th ed. 2010); *accord Earnings*, Encyclopedia of Banking and Finance (10th ed. 1994) (defining "earnings" as "[p]rofits; net income"); *Earnings*, Nasdaq Glossary of Stock Market Terms (last visited Sept. 12, 2024), https://www.nasdaq.com/glossary/e/earnings (defining "Earnings" as "[n]et income for the company during period").

[5] CFPB cites to three other provisions of Dodd-Frank as "[c]onfirming" its interpretation. Opp. 4-5 (citing 12 U.S.C. §§ 5390(n)(2), 5465(c); 15 U.S.C. § 78u-6(g)(5)(D)). But the cited examples directing the deposit, payment, or reporting of "earnings" on certain "balances" or "investments," 12 U.S.C. §§ 5390(n)(2), 5465(c); 15 U.S.C. § 78u-6(g)(5)(D), are plainly different from 12 U.S.C. § 5497(a)(1)'s mandate that CFPB be funded only "from the combined earnings of the Federal Reserve System."

"combined earnings" under 12 U.S.C. § 5497(a)(1) means "net income or profit" rather than "gross income or money earned." Under 12 U.S.C. § 289(a)(1)(A), each Federal Reserve Bank first must pay dividends to their respective bank stockholders "[a]fter all necessary expenses … have been paid or provided for." Each Reserve Bank then deposits their "net earnings" into their respective "surplus fund," subject to a statutory cap. 12 U.S.C. § 289(a)(2), (3)(A). Finally, the Reserve Banks must transfer any "surplus funds" (*i.e.*, "earnings") exceeding the statutory surplus cap "to the Board of Governors of the Federal Reserve System for transfer to the Secretary of the Treasury for deposit in the general fund of the Treasury." *Id.* § 289(a)(3)(B); *see CFSA*, 601 U.S. at 425. Only then—when the Federal Reserve Board combines excess surplus funds from each Reserve Bank—do the Reserve Banks' respective "earnings" become "combined earnings of the Federal Reserve System" destined for the Treasury, which then may be diverted to CFPB under Dodd-Frank and the Appropriations Clause. *See CFSA*, 601 U.S. at 425. The Reserve Banks' income or revenues below the statutory surplus cap are not otherwise destined for the Treasury because they must be deposited in each respective bank's surplus fund. *See id.*; 12 U.S.C. § 289(a)(2), (3)(A). Therefore, contrary to CFPB's claim that "earnings" are a "necessary expense" to be assessed from each Reserve Bank at the top of the waterfall, Opp. 12, CFPB's funding cannot be assessed from bank revenues below the statutory surplus cap because such revenues are neither "combined" nor "otherwise destined for the general fund of the Treasury" under the terms of Dodd-Frank and the Federal Reserve Act. 12 U.S.C. §§ 289(a)(3)(B), 5497(a)(1); *CFSA*, 601 U.S. at 425.

CFPB next asserts "[t]he fact that an early draft of the legislation did not expressly identify the source of the funds the Federal Reserve was to transfer, and the version actually enacted did, does nothing to support Defendant's absurd reading of the statute as enacted." Opp. 14. Putting

aside that Populus's "absurd reading of the statute" is required by *CFSA*, CFPB cannot be correct that Congress's enacted limitation of the source of funds to "combined earnings" means "nothing."

If, as CFPB contends, "earnings" is synonymous with "income or money earned," Opp. 3-4, it was unnecessary for Congress to limit CFPB's funding to "earnings" when the earlier draft already mandated the Federal Reserve "shall transfer funds in an amount equaling 10 percent of the Federal Reserve's total system expenses" to CFPB, Wall Street Reform and Consumer Protection Act of 2009, H.R. 4173, 111th Cong. § 4109(a) (as introduced in House, Dec. 2, 2009). Congress included in Dodd-Frank similar kinds of provisions to fund the Office of Financial Research and Financial Stability Oversight Council. *See* 12 U.S.C. §§ 5345(c) ("During the 2-year period following July 21, 2010, the Board of Governors [of the Federal Reserve] shall provide to the Office an amount sufficient to cover the expenses of the Office."); 5328 ("Any expenses of the Council shall be treated as expenses of, and paid by, the Office of Financial Research."). Yet, Congress expressly limited the source of public funds the Federal Reserve Board must transfer to CFPB to "the combined earnings of the Federal Reserve System." 12 U.S.C. § 5497(a)(1); H.R. 4173, 111th Cong. § 1017(a)(1) (as passed by Senate, May 20, 2010).

"But so what?" asks CFPB. Opp. 15. The answer is that the Court should not read Congress's designated source of funding "from the combined earnings of the Federal Reserve System," 12 U.S.C. § 5497(a)(1), to "become superfluous—without any operative significance." *Pulsifer v. United States*, 601 U.S. 124, 141 (2024). The Court instead should read the provision consistently with *CFSA*, giving the language the same operative meaning (*i.e.*, "surplus funds in the Federal Reserve System [that] would otherwise be deposited into the general fund of the Treasury" under 12 U.S.C. § 289(a)(3)(B)) that "qualifies" as "money 'drawn from the Treasury'" for purposes of the Appropriations Clause. 601 U.S. at 425, 435.

## III. CFPB Does Not Dispute the Federal Reserve Remitted No Combined Earnings to the Treasury Since September 2022.

Without precedent or statutory context to support its preferred dictionary definitions, CFPB resorts to arguing that, if the Court follows *CFSA* and dismisses CFPB's complaint, it will be challenging for this Court and others to determine in future cases exactly when the Federal Reserve has no earnings and CFPB ceases having lawful appropriations. *See* Opp. 10-13.

This argument is a straw man. Following *CFSA* and dismissing for failure to state a claim will not require this Court "to play auditor not only to the Federal Reserve but to the Bureau." Opp. 12. CFPB does not dispute that, starting in September 2022, the Federal Reserve began suspending remittances of combined earnings to the Treasury and has to date recorded a negative $196.665 billion deferred asset for earnings due to the Treasury. *See* Opp. 11-12.[6] Nor does CFPB contest that it is currently spending funds drawn from the Federal Reserve to fund this enforcement action. *See generally* Opp. Regardless of whether the Federal Reserve continued funding CFPB in the same manner it always has, *see* Opp. 12-13, the fact is there currently are no "surplus funds in the Federal Reserve System [that] would otherwise be deposited into the general fund of the Treasury" to pay for CFPB's prosecution of this case, 601 U.S. at 425.[7]

CFPB doubts this Court can evaluate whether the Federal Reserve Banks remitted earnings to the Treasury and CFPB received funding from a source not authorized by Congress. Opp. 11-12. Putting aside that the Federal Reserve Board already self-reports when the Reserve Banks are

---

[6] CFPB protests that Populus "incorrectly claims (at 13), … that the Federal Reserve has sent no money to Treasury since September 2022, when in fact 'certain Reserve Banks'" continued remitting earnings to Treasury after September 2022 and "across 2022 as a whole." Opp. 11. But Populus did *not* claim (at 13 or otherwise) that the Federal Reserve sent no money to Treasury since September 2022. *See generally* Mot. Instead, Populus asserted, and CFPB does not dispute, that the Federal Reserve "began suspending remittances" "[s]tarting in September 2022." Mot. 13.

[7] The Federal Reserve Board's accounting treatment of the Reserve Banks' losses as a "deferred asset" is of no consequence here, when CFPB's funding provision requires "transfer … from the combined earnings of the Federal Reserve System" "[e]ach year (or quarter of such year), beginning on the designated transfer date, and each quarter thereafter"—not years (or longer) in the future when the Federal Reserve might erase its deferred asset and resume remitting earnings to the Treasury. 12 U.S.C. § 5497(a)(1).

not remitting earnings to the Treasury, courts often "play auditor" in financial disputes between litigants—whether government or private. CFPB may consider it "absurd" that a court could "determine when the Bureau drew particular moneys that it spent on a challenged action," Opp. 12, but "Congress's decision to require" CFPB to be funded from the Federal Reserve's combined earnings "must be given practical effect rather than swept aside in the face of admittedly [or allegedly] difficult circumstances." *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010).

**IV. Dismissal Is the Appropriate Remedy Here.**

Lastly, CFPB attempts to argue none of the above "require[s] dismissing this action." Opp. 15. But CFPB's Opposition fails to distinguish the Supreme Court precedents Populus cited reversing government enforcement orders because they exceeded the agency's constitutional and statutory authority. *See* Mot. 3-4 (citing *NLRB v. Noel Canning*, 573 U.S. 513, 521-22, 557 (2014); *New Process Steel, L.P.*, 560 U.S. at 687-88). Indeed, CFPB argued in *CFSA* that "[t]raditional remedial principles … mean affording respondents at most prospective relief preventing the CFPB from enforcing … until Congress provides the Bureau with funding from another source." Br. 45. CFPB asserted there that retroactive invalidation of the agency's rulemaking was inappropriate, but a "prospective remedy"—like dismissal—"would provide meaningful relief to respondents by ensuring that, going forward," the challenged agency rulemaking "'will be enforced only by' an agency funded through constitutionally permissible appropriations." *Id.* at 45-46 (quoting *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 513 (2010)). Here, Populus requests only the relief that CFPB admitted would be proper in its briefing in *CFSA*, but CFPB still maintains there is no remedy for its use of unlawful appropriations. *See* Opp. 15. The Court should reject CFPB's attempt to reverse course on this issue, too.

**CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, the Court should grant the motion.

Dated: September 13, 2024

Respectfully Submitted,

*/s/ Angela C. Zambrano*
Angela C. Zambrano
Texas Bar No. 24003157
angela.zambrano@sidley.com
Robert S. Velevis
Texas Bar No. 24047032
rvelevis@sidley.com
Barret V. Armbruster
Texas Bar No. 24102922
barmbruster@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

Chris J. Willis (*pro hac vice*)
Georgia Bar No. 766297
chris.willis@troutman.com
Sarah T. Reise (*pro hac vice*)
Georgia Bar No. 181567
sarah.reise@troutman.com
TROUTMAN PEPPER HAMILTON
SANDERS LLP
600 Peachtree Street, N.E.
Suite 3000
Atlanta, Georgia 30308
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*Attorneys for Defendant Populus Financial Group, Inc. d/b/a ACE Cash Express*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2024, I electronically filed the above Reply in Support of Motion to Dismiss for Failure to State a Claim with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Angela C. Zambrano*
Angela C. Zambrano